**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

**CASE NO:**

SEAN CANNET, on behalf of himself
and all others similarly situated,

Plaintiff(s),

v.

THE MAD ROOM HOSPITALITY, LLC, and
THE MAD ROOM, LLC, both doing business as
MAI KAI,

Defendants.
_____________________________________/

**COLLECTIVE AND CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, SEAN CANNET ("Plaintiff" or "Mr. Cannet") on behalf of himself and all others similarly situated, and pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, Fla. Stat. 448.440, and Art. X, Sec. 24 of the Florida Constitution, files this Collective and Class Action Complaint for Damages and Demand for Jury Trial against Defendants, THE MAD ROOM HOSPITALITY, LLC, and THE MAD ROOM, LLC, both doing business as the Mai-Kai Restaurant ("Defendants" or, "Mai-Kai" or, "Restaurant") (collectively, "Defendants"), for failure to pay federal and state minimum wages during the relevant time period, as follows:

**INTRODUCTION**

1. Plaintiff brings this class action under the Fair Labor Standards Act ("FLSA"), Florida Minimum Wage Act ("FMWA"), and Art. X, Sec. 24 of the Florida Constitution on behalf of himself and all similarly situated Servers who work or have worked at the Mai-Kai, a restaurant

owned and operated by Defendants, during the applicable statute of limitations. Defendants committed federal and state wage violations because Defendants: (1) failed to pay the Federal minimum wage to Plaintiff and similarly situated Servers during their orientation and training periods; (2) compensated Servers at the reduced wage for tipped employees, but failed to provide Plaintiff and all others similarly situated with statutory notice of taking a tip credit; (3) required Plaintiff and all other similarly situated Servers to more than occasionally perform improper types, and/or excessive amounts, of non-tipped jobs, and non-serving duties; and (4) required Plaintiff and all others similarly situated to purchase uniforms and equipment necessary to perform their primary duties without reimbursement, thereby causing their wages to fall below the applicable Florida minimum wage.

## PARTIES AND BACKGROUND

2. During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris*.

3. The Mai-Kai is a historic Polynesian-themed restaurant located in Fort Lauderdale, Florida. The Mai Kai first opened in 1956 and has provided unique dining and entertainment experiences to guests.

4. From 2020 to 2024 the Defendants spent millions of dollars to renovate the Mai-Kai venue. Following their investment in the renovation, the Defendants launched a social media campaign to hire Servers and other staff to train and work at the restaurant prior to its grand re-opening.

5. On September 10, 2024, Defendants interviewed and hired Mr. Cannet to work as a Server after he responded to one of Defendants' Instagram advertisements.

6. Following a successful interview, the Defendants (through management) instructed Mr. Cannet to attend several orientation and training sessions that took place from September through November 2024.

7. Defendants also hired dozens of other individuals to work in Server positions who were likewise required to attend these orientation and training sessions.[1]

8. Defendants notified Mr. Cannet and other newly hired staff that orientation and training would begin on Thursday, September 19, 2024, from 4:00 p.m. through 9:00 p.m.

9. Defendants notified Mr. Cannet and the other similarly situated Servers that orientation and training would continue on Friday September 20, 2024, from 4:00 p.m. through 9:00 p.m., and then resume the following week, Monday, September 23, 2024, through Friday, September 27, 2024, from 4:00 p.m. through 9:00 p.m. each day.

10. This orientation and training continued through the month of October 2024 and into November 2024.

11. Notably, Mr. Cannet and the other similarly situated Servers did not start to get paid until October 17, 2024, which covered the immediately preceding pay period of October 3, 2024, through October 17, 2024. As such, Mr. Cannet and the other similarly situated Servers were not paid, at all, for their orientation and training periods from September 19, 2024, through October 2, 2024.

12. Moreover, Mr. Cannet and other Servers were instructed to purchase various items they were required to use as part of their uniform and tools of the trade but were never reimbursed by the Defendants for these items. Specifically, Mr. Cannet and all other Servers were required to

---

[1] "Servers" hereinafter also refers to Dining Room Servers, Mai Kai Girls, and/or Molokai Servers.

purchase a specific variety of white pants as part of their uniform, as well as flashlights, lighters, and pens, all of which they were required to use at work to perform their jobs.

13. The Mai-Kai held its official ribbon cutting and grand re-opening ceremony on Thursday November 21, 2024.

14. Following this ribbon cutting ceremony, Mr. Cannet continued to work for Defendants until August 21, 2025.

15. Plaintiff and the **FLSA putative collective members** are/were Mai-Kai restaurant Servers who worked for Defendants within the last three (3) years at Mai-Kai.

16. Plaintiff and the **FMWA putative class members** are/were Mai-Kai restaurant Servers who worked for Defendants within the last five (5) years at Mai-Kai.

17. The proposed collective and class members worked for Defendants in the same capacity as Plaintiff in that they were non-exempt, hourly-paid, tipped Servers for Defendants at the Mai-Kai restaurant.

18. Plaintiff seeks certification of four (4) separate collective/classes under Fed. R. Civ. P. 23, and/or the FMWA, and Florida Constitution as follows:

> **<u>Orientation and Training Period Collective:</u> Federal Collective Action on behalf of all Servers who worked for Defendants at the Mai-Kai restaurant during the orientation and training period from September 19, 2024 through October 2, 2024 and were not paid at or above the federal minimum wage.**
>
> **<u>Tip Notice Class:</u> Florida Class action on behalf of all Servers who worked for Defendants at the Mai-Kai restaurant during the five (5) years preceding this lawsuit who did not receive proper notice from Defendants that it would be taking a tip credit pursuant to Fla. Const. Art. X 24(c) and/or F.S. § 448.110.**

**<u>Dual Jobs Class:</u> Florida Class action on behalf of all Servers who worked for Defendants at the Mai-Kai restaurant during the previous five (5) years preceding this lawsuit, who were required to spend more than 20% of each workweek performing incidental, non-tipped duties and/or side work.**

**<u>Reimbursement Class:</u> Florida Class action on behalf of all Servers who worked for Defendants at the Mai-Kai restaurant during the five (5) years preceding this lawsuit who did not receive proper reimbursement for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs.**

19. The precise size and identity of each class should be ascertainable from the business records, tax records, and/or personnel records of Defendants; however, Plaintiff estimates that the total number of class members in each class exceeds 50 Servers.

20. Defendants were the "employer" of Plaintiff and all members of the putative Collective and Classes as that term is defined by the FLSA and FMWA during all times pertinent to the allegations herein.

21. During all times material hereto, Defendants were vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices that occurred at the Mai-Kai restaurant.

22. Defendants implement uniform pay, tip, and time-keeping practices at the Mai-Kai restaurant that apply to Plaintiff and all similarly situated Servers.

23. Plaintiff and the putative collective and class members are/were non-exempt, hourly Servers.

## <u>JURISDICTION AND VENUE</u>

24. This action is brought under 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, the Florida Minimum Wage Act ("FMWA") and Article X Section 24 of the Florida Constitution to recover damages from Defendants.

25. This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

26. The acts and/or omissions giving rise to this dispute took place within Broward County, Florida, which falls within the jurisdiction of this Honorable Court.

27. Defendants regularly transact business in Broward County, Florida, and jurisdiction is therefore proper.

28. Venue is also proper within Broward County, Florida.

29. Plaintiff fulfilled all conditions precedent required to bring class action claims under the FMWA.

30. More specifically, on October 7, 2025, Plaintiff, through his counsel, served Defendants with a written pre-suit demand notice regarding his FMWA claims, requesting Defendants to pay him and the putative FLSA and FMWA collective/classes the minimum wages owed to them. Defendants refused to pay Plaintiff or the FMWA classes any wages whatsoever.

**FLSA COVERAGE**

31. Defendant, The Mad Room Hospitality, LLC, is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two or more employees engaged in commerce or in the production of goods for commerce, or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

32. Defendant, The Mad Room, LLC, is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two or more employees engaged in commerce or in the production

of goods for commerce, or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

33. Defendants, The Mad Room Hospitality, LLC and The Mad Room, LLC, were joint employers of Plaintiff and similarly situated employees under the FLSA and Florida law, as Defendants shared Plaintiff's and similarly situated employees' services, had Plaintiff and similarly situated employees acting in the interest of each business, and shared common control of Plaintiff and similarly situated employees.

34. During all time periods pertinent hereto, Defendants' employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, eggs, rice, meat, chicken, pork, cheese, broccoli, carrots, peas, oil, zucchini, onions, peppers, shrimp, beef, steak, potatoes, bread, hot sauce, buns, salt, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, flour, sugar, coffee, tea, soda, water bottles, and other goods and materials that had previously travelled through interstate commerce.

35. Defendants had gross annual revenue in excess of $500,000.00 in 2020, 2021, 2022, 2023, 2024 and are expected to have gross annual revenue in excess of $500,000.00 in 2025.

## GENERAL ALLEGATIONS

### DEFENDANTS FAILED TO PROVIDE SERVERS WITH SUFFICIENT NOTICE OF THE TIP CREDIT

36. When Defendants hire Servers, Defendants credit a portion of Servers' tips toward its minimum wage obligations, and, consequently, it pays below the applicable state minimum wage.

37. Nevertheless, Defendants failed to provide such Servers the required and sufficient notice of the tip credit under Florida law.

38. During all times material hereto, Defendants **did not**: (1) provide the full statutorily required tip notice under Florida law; (2) pay the applicable Florida minimum wage; or (3) track the time Servers spent performing side work and non-tipped duties.

39. Plaintiff and the ***Tip Notice Class*** members are entitled to recover at least the Florida minimum wage for each hour spent performing work.

40. Moreover, during all times material hereto, Defendants claimed a tip credit under Florida law and paid Plaintiff and all similarly situated Servers the reduced wage for tipped employees, including during shifts when they spent a substantial amount of continuous time performing directly supporting side work.

**DEFENDANTS REQUIRE SERVERS TO INCUR UNIFORM AND EQUIPMENT COSTS FOR WHICH THEY WERE NOT REIMBURSED**

41. Pursuant to the Department of Labor's regulations at 29 C.F.R. § 531.35, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid under the [FLSA]." *Id.*

42. Accordingly, "[i]f an expense is determined to be primarily for the benefit of the employer, the employer must reimburse the employee during the workweek in which the expense arose." *See Arriaga,* 305 F.3d at 1237 *citing* 29 C.F.R. § 531.35. Therefore, "[w]orkers must be reimbursed during the first workweek for pre-employment expenses which benefit the employer, to the point that wages are at least equivalent to the minimum wage." *Id.*

43. Plaintiff and all similarly situated Servers were instructed to purchase a specific variety of white pants as part of their uniform, as well as flashlights, lighters, and pens, which they were required to use at work to perform their jobs.

44. Under the pertinent laws and regulations, Plaintiff and all similarly situated Servers should have been reimbursed for these costs but were not. Accordingly, the Defendants are required to reimburse Plaintiff and all similarly situated Servers for these costs.

**DEFENDANTS REQUIRE SERVERS TO PERFORM NON-TIP PRODUCING DUTIES AND SIDE WORK THAT EXCEEDED 20% OF ALL WORK PERFORMED IN A WORKWEEK**

45. During all times material hereto, Defendants required Plaintiff and all similarly situated Servers to perform more than 20% of each workweek performing incidental, non-tipped duties and/or side work.

46. Specifically, Plaintiff and all similarly situated Servers were directed to perform non-tipped duties and side-work at the opening and closing of their shifts for a total of at least 1.5 hours.

47. Additionally, Plaintiff and all similarly situated Servers often performed non-tipped side-work and duties for several hours after the Restaurant was closed to the public.

48. When no customers are present, Defendants require Servers to perform a variety of non-tipped jobs and other duties which are not part of their tip-producing Server jobs.

49. These non-tipped duties include but were not limited to: stocking items throughout the Restaurant, stacking and unstacking chairs, rolling tubs of silverware, filling table caddies with condiments and seasonings, sweeping floors, hauling ice to and from freezers, filling up ice buckets throughout the restaurant, restocking, cleaning tables and bar tops, washing glassware, polishing glassware, and cleaning menus.

50. When Plaintiff and all similarly situated Servers are performing related and/or unrelated side-work and preparation duties they are compensated a sub-minimum wage.

## DEFENDANTS FAILED TO COMPLY WITH ELEVENTH CIRCUIT INTERPRETATION AND APPLICATION OF DUAL JOBS REGULATION, 29 C.F.R. § 531.56

51. On September 15, 2021, the United States Court of Appeals for the Eleventh Circuit held that the Dual Jobs Regulation, 29 C.F.R. § 531.56, is "genuinely ambiguous concerning the amount of time a 'tipped employee' can spend doing untipped but related duties and concerning what tasks constitute related duties." *See Rafferty v. Denny's, Inc.,* 13 F.4th 1166, 1179 (11th Cir. 2021).[2]

52. The Eleventh Circuit further held that "[w]hen we employ the traditional tools of interpretation to determine the meaning of the dual-jobs regulation, we conclude that the regulation prohibits employers from taking the tip credit for hours when an employee performed unrelated duties or performed related duties for more than twenty percent of her time." *Id.* at 1188.

53. Accordingly, employers in the Eleventh Circuit are forbidden from taking a tip credit when they compel tipped employees, like Plaintiff, to perform unrelated duties or spend more than 20% of their workweek performing unrelated duties.

---

[2] On August 23, 2024, the Fifth Circuit Court of Appeals vacated 29 C.F.R. § 531.56(f) ("Final Rule"), on the basis that it was arbitrary, capricious and contrary to FLSA's text. *See Restaurant Law Center v. U.S. Dept. of Labor,* 2024 WL 3911308 (5th Cir. Aug. 23, 2024). However, the 5th Circuit specifically held its rejection of the Final Rule "in no way… bear[s] on the validity of the dual-jobs regulation, which is not challenged." *Id.* at *8. Importantly, in *Restaurant Law Center,* the appellant "stated at oral argument that the dual-jobs regulation is 'mostly fine.'" *Id.* at n.10. Moreover, the 5th Circuit does not address *Rafferty's* interpretation and application of the dual-jobs regulation. *Id.* Instead, the 5th Circuit cites *Rafferty* but narrows its focus to the court's decision to not extend *Auer* deference to a 2018 revision to the Field Operations Handbook because the revision was not a "reasonable interpretation of the regulation." *Id.* at *4. The 5th Circuit ignores that the 11th Circuit held the 20% limitation was a reasonable interpretation of the Dual Jobs regulation. This is still controlling in the Eleventh Circuit.

54. During all times material hereto, Defendants required Plaintiff and its similarly situated Servers to perform unrelated duties and related side work duties for more than 20% for the workweek.

55. For example, Plaintiff worked approximately thirty-five (35%) percent of his workweek performing non-tipped side duties.

56. Plaintiff and the **Dual Jobs Class** members are entitled to recover at least Florida minimum wage for more than occasional or excessive amounts of non-tipped work and non-serving duties.

57. Plaintiff and the putative class members performed the same or substantially similar side work for Defendants and were otherwise paid in an identical manner by Defendants.

58. Although Defendants were aware of the requirements of the FLSA, and the pertinent regulations thereto, and knew or should have known of the FLSA's requirements, and Defendants willfully and/or intentionally failed to pay Plaintiff and the putative class members in accordance with Florida law.

**COLLECTIVE AND CLASS ALLEGATIONS**

59. FLSA Collective members are treated equally and similarly at the Mai-Kai restaurant that is owned and operated by Defendants, in that they were denied federal minimum wage during their orientation and training periods.

60. FMWA Class members are treated equally and similarly at the Mai-Kai restaurant that is owned and operated by Defendants, in that they were denied state minimum wages as Defendants did not provide the required and sufficient notice of the tip credit under Florida law.

61. FMWA Class members are treated equally and similarly at the Mai-Kai restaurant that is owned and operated by Defendants, in that they were denied state minimum wages when they spent more than 20% of a workweek performing "non-tipped" duties and side work.

62. FMWA Class members are treated equally and similarly at the Mai-Kai restaurant that is owned and operated by Defendants, in that they were required to incur uniform and equipment costs for which they were not reimbursed.

63. Defendants employed at least fifty (50) Servers who worked for Defendants at the Mai-Kai restaurant during the orientation and training period from September 19, 2024 through October 2, 2024 and were not paid at or above the federal minimum wage.

64. Defendants employed at least fifty (50) Servers who were paid a reduced tip credit wage and were not provided with the required nor sufficient notice of the tip credit under Florida law during the past five (5) years.

65. Defendants employed at least fifty (50) Servers who were paid a reduced tip credit wage and were required to spend more than 20% of their workweek performing non-tipped duties and side work during the past five (5) years.

66. Defendants employed at least fifty (50) Servers who were required to incur uniform and equipment costs for which they were not reimbursed during the past five (5) years.

67. At all times material hereto, Defendants had express or constructive knowledge of the work performed by Plaintiff and all other similarly situated Servers.

68. Moreover, at all times material hereto, Defendants had express or constructive knowledge of the time Plaintiff and other similarly situated employees worked but failed to keep and maintain accurate time records, thereby violating state and federal law.

69. Plaintiff and the collective/class members performed the same or substantially similar job duties for Defendants at the Mai-Kai restaurant, as Servers, and were otherwise paid in an identical manner by Defendants and were subject to the same employment policies.

70. Plaintiff and the class members performed the same or substantially similar side work for Defendants at the Mai-Kai restaurant.

71. Although Defendants were aware of the requirements of the FLSA, Florida Constitution and FMWA, and the pertinent regulations thereto, Defendants willfully and/or intentionally failed to pay Plaintiff and the class members in accordance with federal or state law.

## COUNT I – FLSA FEDERAL MINIMUM WAGE VIOLATIONS AGAINST ALL DEFENDANTS (ORIENTATION AND TRAINING PERIOD COLLECTIVE)

72. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 71 as though set forth fully herein.

73. Plaintiff was entitled to be paid at or above the federal minimum during his employment with Defendant.

74. The FLSA requires covered employers to pay employees at least the federal minimum wage for all hours worked.

75. Orientation and training time constitute compensable working time under the FLSA.

76. Instead of compensating Plaintiff at or above the applicable minimum wage during his orientation and training period, Defendants failed to pay the Plaintiff, at all, during this time period, and therefore violated federal law.

77. Defendants uniformly applied and enforced this unlawful policy to its Servers.

78. Pursuant to 29 U.S.C. § 206, Plaintiff seeks to recover federal minimum wages for himself and the following similarly situated Collective:

> **Orientation and Training Period Collective:** **Federal Collective Action on behalf of all Servers who worked for Defendants at the Mai-Kai restaurant during the orientation and training period from September 19, 2024 through October 2, 2024 and were not paid at or above the federal minimum wage.**

79. Defendants enacted and enforced unlawful policies that were applied uniformly to all Servers who worked during the orientation and training period from September 19, 2024 through October 2, 2024.

80. Defendants' failure to pay minimum wages was willful and intentional, and Defendants knew or showed reckless disregard for whether their conduct violated the FLSA.

81. As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff has been damaged in the loss of federal minimum wages for one or more weeks of work during his employment with Defendants.

82. Defendants' willful and/or intentional violations of law entitle Plaintiff to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, SEAN CANNET, respectfully requests that this Honorable Court enter judgment in his favor against Defendants, THE MAD ROOM HOSPITALITY, LLC, and THE MAD ROOM, LLC,, and award Plaintiff, and the putative class: (a) unpaid minimum wages to be paid by Defendants; (b) liquidated damages to be paid by Defendants; (c) all reasonable attorney's fees and litigation costs permitted by the FLSA to be paid by Defendants; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## COUNT II – FLORIDA CLASS ACTION FOR FLORIDA MINIMUM WAGE VIOLATIONS AGAINST ALL DEFENDANTS (TIP NOTICE CLASS)

83. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 71 as though set forth fully herein.

84. Defendants violated the terms of Fla. Stat. § 448.110 and the Florida Constitution's minimum wage requirements by taking a tip credit toward the applicable Florida minimum wage but by failing to provide Plaintiff and the putative class members the statutorily required tip notice for the past five (5) years. The Florida tip credit requirements are modeled after the FLSA.

85. Defendants therefore forfeits any tip credit under Florida law and owes each Server *at least* $3.02 for each hour of work they performed within the past five (5) years.

86. On October 7, 2925, and through his counsel, Plaintiff served Defendants with a written pre-suit notice and demand pursuant to Fla. Stat. § 448.110, on behalf of himself, and a class of all similarly situated Servers.

87. More than fifteen (15) calendar days have elapsed since Plaintiff served Defendants with his written pre-suit notice and demand and as the date and time of this filing, Defendants have failed to tender full payment to Plaintiff and the class.

88. In 2020, the Florida minimum wage was $8.56 per hour.

89. From January 1, 2021, through September 29, 2021, the Florida minimum wage was $8.65 per hour.

90. From September 30, 2021, through September 29, 2022, the Florida minimum wage was $10.00 per hour.

91. From September 30, 2022, through September 29, 2023, the Florida minimum wage was $11.00 per hour.

92. From September 30, 2023, through September 29, 2024, the Florida minimum wage is/was $12.00 per hour.

93. From September 30, 2024, through the present, the Florida minimum wage is/was $13.00 per hour.

94. Plaintiff and the proposed Tip Notice Class members are/were subjected to similar violations of the FMWA and Florida Constitution.

95. Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following class for Defendants' failure to pay Florida minimum wages:

> **<u>Tip Notice Class:</u> All Servers who worked for Defendants at the Mai-Kai restaurant during the five (5) years preceding this lawsuit who did not receive proper notice from Defendants that it would be taking a tip credit pursuant to Fla. Const. Art. X 24(c) and/or F.S. § 448.110.**

**FED. R. CIV. P. 23 CLASS ALLEGATIONS**

96. Plaintiff brings this FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class (the "Tip Notice Class").

97. The putative Tip Notice Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wages based on Defendants' failure to provide Plaintiff and similarly situated Servers proper notice of Defendants' intent to rely upon a tip credit under Florida law.

98. *Numerosity*: Defendants employed in excess of fifty (50) Servers during the past five (5) years who were not provided the required tip notice; nevertheless, Defendants claimed a tip credit for these employees. Given Defendants' considerable size and systematic nature of their failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

99. Plaintiff and the Tip Notice Class members were subject to the same employment policies.

100. *Commonality*: Common questions of law and fact exist as to all members of the Class and such questions predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the class include, but are not limited to, the following: (a) whether Plaintiff and the Tip Credit Class were "employees" of Defendants; (b) whether Plaintiff's and the Tip Credit Class's hours were properly recorded; (c) whether Defendants violated the Florida minimum wage rights of Plaintiff and the Tip Notice Class under the FMWA by failing to provide sufficient notice of taking a tip credit; (d) whether Defendants willfully or intentionally refused to pay Plaintiff and the Tip Notice Class the Florida minimum wages as required under Florida law; (e) whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and (f) the nature, extent, and measure of damages suffered by the Plaintiff and the Tip Notice Class based upon Defendants' conduct.

101. *Typicality*: Plaintiff's claims are typical of the claims of the members of the Tip Notice Class. Plaintiff's claims arise from Defendants' company-wide policy of paying all Servers a reduced wage without providing the statutorily required notice of taking a tip credit.

102. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Tip Notice Class. Plaintiff has no interest that might conflict with the interests of the Tip Notice Class. Plaintiff is interested in pursuing his claims against Defendants vigorously and has retained counsel competent and experienced in class and complex litigation.

103. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to arise in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

104. Defendants have acted on grounds generally applicable to the Tip Notice Class, thereby making relief appropriate with respect to the Tip Notice Class as a whole. Prosecution of separate actions by individual members of the Tip Notice Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Tip Notice Class that would establish incompatible standards of conduct for Defendants.

105. Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Tip Notice Class.

106. Plaintiff and the Tip Notice Class members performed the same job duties, as Servers, and were paid in an identical manner by Defendants based on Defendants' failure to provide Plaintiff and the Tip Notice Class members the appropriate tip credit notice when Defendants claimed a tip credit.

107. Plaintiff and the Tip Notice Class members were not paid proper Florida minimum wages during the relevant time period.

108. Defendants either willfully chose not to comply with the FMWA's tip credit laws, and deliberately failed to pay the Tip Notice Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FMWA. As a result, Defendants either knew, or showed reckless disregard for, the pertinent Tip Credit laws under the FMWA.

109. Defendants were aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Tip Notice Class members in accordance with the law.

110. The precise size and identity of the class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of putative Tip Notice Class members exceeds fifty (50) Servers.

111. This action is intended to include each and every Server who worked at Defendants' restaurant in the state of Florida during the past five (5) years who was not provided the requisite tip credit notice during any workweek.

112. During all times material hereto, Plaintiff and all Tip Notice Class members were non-exempt employees of Defendants.

113. Plaintiff and the Tip Notice Class members performed work as Servers, which was an integral part of Defendants' business.

114. Defendants violated the FMWA and the Florida Constitution's provision on minimum wages by not providing Plaintiff and the putative Tip Notice Class members the requisite tip credit notice.

115. The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked due to Defendants' failure in providing an adequate tip credit notice.

116. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a pre-suit Florida Minimum Wage demand letter as required by Florida law before this claim was filed.

117. A class action suit, such as this one, is superior to other available means for the fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

118. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

119. Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

120. The relief sought is common to the entire class including, among other things: (a) payment by Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or Fla. Stat. § 448.110; (b) payment by Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or Fla. Stat. § 448.110 as a result of Defendants' intentional and/or willful violations; and (c) payment by Defendants of the costs and expenses of this action, including reasonable attorney's fees of Plaintiff's counsel.

121. Plaintiff and the Tip Notice Class members have sustained damages arising out of the same wrongful and company-wide employment policies of Defendants in violation of the FMWA and the Florida Constitution.

122. Defendants' willful and/or intentional violations of state law entitle Plaintiff and the putative Tip Notice Class members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, SEAN CANNET, respectfully requests that this Honorable Court enter judgment in his favor against Defendants, THE MAD ROOM HOSPITALITY, LLC, and THE MAD ROOM, LLC, and award Plaintiff, and the putative class: (a) unpaid Florida minimum wages to be paid by Defendants; (b) the tip credit unlawfully taken by Defendants; (c) liquidated damages to be paid by Defendants; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendants; and any and all such further relief as the Court deems just and reasonable under the circumstances.

**COUNT III – FLORIDA CLASS ACTION FOR FLORIDA MINIMUM WAGE VIOLATIONS AGAINST ALL DEFENDANTS**
**(DUAL JOBS CLASS)**

123. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 71 as though set forth fully herein.

124. Defendants claimed a tip credit under Florida law for each hour of work performed by Plaintiff and all other Servers during the previous five (5) years.

125. Plaintiff and all other similarly situated Servers are/were entitled to be paid Florida's full minimum wage during their employment with Defendants.

126. Plaintiff and the proposed class members were subjected to similar violations of Florida law as a result of Defendants' failure to pay them the full state minimum wage when they were required to spend more than 20% of their workweek performing non-tipped duties and side work.

127. Plaintiff seeks recovery of Florida minimum wages under Fed. R. Civ. P. 23 for himself and the following class for Defendants' failure to pay constitutionally mandated state minimum wages:

> **Dual Jobs Class: All Servers who worked for Defendants at the Mai-Kai restaurant during the previous five (5) years preceding this lawsuit, who were required to spend more than 20% of each workweek performing incidental, non-tipped duties and/or side work.**

**FED. R. CIV. P. CLASS ALLEGATIONS**

128. Plaintiff brings his FMWA claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the above class.

129. The putative Dual Jobs Class members are treated equally and similarly by Defendants, in that they were denied Florida minimum wages during the previous five (5) years based upon Defendants requiring Plaintiff and similarly situated Servers to spend more than 20% of their workweeks performing non-tipped duties and side work.

130. *Numerosity:* Defendants employed at least fifty (50) Servers at the Mai-Kai restaurant during the past five (5) years who were required to spend more than 20% of their workweeks performing non-tipped duties and side work and were not paid the pertinent Florida minimum wage.

131. Given Defendants' size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

132. Plaintiff and the Dual Jobs Class members were victims of the same policies, including Defendants' requirement that employees spend more than 20% of each workweek performing non-tipped duties and side work.

133. *Commonality:* Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the Class include, but are not limited to the following: (a) whether Plaintiff and the Dual Jobs Class members were "employees" of Defendants; (b) whether Plaintiff and the Dual Jobs Class's hours were properly recorded; (c) whether Defendants violated the Florida minimum wage rights of Plaintiff and the Dual Jobs Class under the FMWA and Florida Constitution by failing to compensate the putative class the full state minimum wage when they spent more than 20% of their workweek performing non-tipped duties and side work; (d) whether Defendants willfully or intentionally refused to pay Plaintiff and the Dual Jobs Class Florida minimum wages; (e) whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and (f) the nature, extent, and measure of damages suffered by Plaintiff and the Dual Jobs Class.

134. *Typicality:* Plaintiff's claims are typical of the claims of the members of the Dual Jobs Class. Plaintiff's claims arise from Defendants' company-wide policy of claiming a tip credit for all Servers and requiring them spend more than 20% of their workweek on non-tipped duties and side work.

135. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Dual Jobs Class. Plaintiff has no interest that might conflict with the interests of the Dual Jobs Class. Plaintiff is determined to pursue his claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

136. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

137. Defendants acted on grounds generally applicable to the Dual Jobs Class, thereby making relief appropriate with respect to the Dual Jobs Class as a whole. Prosecution of separate actions by individual members of the Dual Jobs Class would create the risk of varying adjudications with respect to the individual members of the Dual Jobs Class that would establish incompatible standards of conduct for Defendants.

138. The identity of the Dual Jobs Class is readily identifiable from Defendants' records.

139. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of its violations of the FMWA and Florida Constitution.

140. Furthermore, even if every member of the Dual Jobs Class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

141. Plaintiff and the Dual Jobs Class members performed the same job duties, as restaurant Servers, and were paid in an identical manner by Defendants based on Defendants requiring restaurant Servers to spend more than 20% of shifts and workweeks on non-tipped duties and side work without paying restaurant Servers at least the full applicable Florida minimum wage.

142. This action is intended to include each and every restaurant Server who worked for Defendants at the Mai-Kai restaurant during the past five (5) years who was required to spend more than 20% of their workweek performing non-tipped duties and side work.

143. During all material times hereto, Plaintiff and all Dual Jobs Class members are/were non-exempt, tipped employees of Defendants.

144. Servers' work for Defendants is an integral part of Defendants' business.

145. In 2020, the Florida minimum wage was $8.56 per hour.

146. From January 1, 2021, until September 29, 2021, the Florida minimum wage was $8.65 per hour.

147. From September 30, 2021, through September 29, 2022, the Florida Minimum Wage was $10.00 per hour.

148. From September 30, 2022, through September 29, 2023, the Florida Minimum Wage was $11.00 per hour.

149. From September 30, 2023, through September 29, 2024, the Florida Minimum Wage was/is $12.00 per hour.

150. From September 30, 2023, through the present, the Florida Minimum Wage was/is $13.00 per hour.

151. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand before this claim was filed.

152. More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative Dual Jobs Class for the minimum wages owed.

153. The relief Plaintiff seeks is common to the entire class including, inter alia: (a) payment by the Defendants of actual damages caused by its failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution; (b) payment by the Defendants of liquidated damages caused by its intentional and/or willful failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution; (c) payment by the Defendants of the costs and expenses of this action, including attorney's fees and costs of Plaintiff's counsel.

154. Defendants either willfully chose not to comply with the FMWA's Dual Jobs laws, and deliberately failed to pay the Dual Jobs Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FMWA. As a result, Defendants either knew, or showed reckless disregard for, the pertinent Dual Jobs laws under the FMWA.

155. Defendants were aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Dual Jobs Class members in accordance with the law.

156. Defendants' willful and/or intentional violations of state law entitle Plaintiff and the putative Dual Jobs Class members to an additional amount of liquidated, or double, damages.

157. As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the Dual Jobs Class members have been damaged in the loss of Florida minimum wages for one or more weeks of work during their employment with Defendants.

WHEREFORE, Plaintiff, SEAN CANNET, respectfully requests that this Honorable Court enter judgment in his favor against Defendants, THE MAD ROOM HOSPITALITY, LLC, and THE MAD ROOM, LLC,, and award Plaintiff, and the putative class: (a) unpaid Florida minimum wages to be paid by Defendants; (b) the tip credit unlawfully taken by Defendants; (c) liquidated

damages to be paid by Defendants; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendants; and any and all such further relief as the Court deems just and reasonable under the circumstances.

**COUNT IV – FLORIDA CLASS ACTION FOR REIMBURSEMENT OF UNIFORM AND OTHER EXPENSES AGAINST ALL DEFENDANTS**
**(REIMBURSEMENT CLASS)**

158. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 71 as though set forth fully herein.

159. Plaintiff all other similarly situated Servers were instructed to purchase a specific variety of white pants as part of their uniform, as well as flashlights, lighters, and pens, which they were required to use at work to perform their jobs.

160. Under the pertinent laws and regulations, Plaintiff and all other similarly situated Servers should have been reimbursed for these costs but were not.

161. Plaintiff and the proposed class members were subjected to similar violations of Florida and Federal law as a result of Defendants' failure to reimburse them for purchases of uniforms and equipment for which were requirements of the workplace.

162. Plaintiff seeks recovery under Fed. R. Civ. P. 23 for himself and the following class for Defendants' failure to pay reimbursement for mandatory out-of-pocket expenses:

> **Reimbursement Class:** **All Servers who worked for Defendants at the Mai-Kai restaurant during the five (5) years preceding this lawsuit who did not receive proper reimbursement for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs.**

**FED. R. CIV. P. CLASS ALLEGATIONS**

163. Plaintiff brings his FMWA claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the above class.

164. The putative Reimbursement Class members are treated equally and similarly by Defendants, in that they were not reimbursed for uniform and equipment purchases that were mandated by the Defendants.

165. *Numerosity:* Defendants employed at least fifty (50) Servers at the Mai-Kai restaurant during the past five (5) years who were uniform and equipment purchases that were mandated by the Defendants.

166. Given Defendants' size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

167. Plaintiff and the Reimbursement Class members were victims of the same policies, including Defendants' requirement that employees purchase their own uniforms and other items required by Defendants to perform their jobs.

168. *Commonality:* Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the Class include, but are not limited to the following: (a) whether Plaintiff and the Reimbursement Class members were "employees" of Defendants; (b) whether Plaintiff and the Reimbursement Class's purchases properly recorded; (c) whether Defendants violated the FLSA, FMWA and Florida Constitution by failing to reimburse the putative class for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs.; (d) whether Defendants willfully or intentionally refused to reimburse the Class members for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs; (e) whether Defendants knew or should have known of requirement to reimburse the Class members for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs and

either intentionally avoided or recklessly failed to reimburse; and (f) the nature, extent, and measure of damages suffered by Plaintiff and the Reimbursement Class.

169. *Typicality:* Plaintiff's claims are typical of the claims of the members of the Reimbursement Class. Plaintiff's claims arise from Defendants' company-wide policy of failing to reimburse the Class members for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs.

170. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Reimbursement Class. Plaintiff has no interest that might conflict with the interests of the Reimbursement Class. Plaintiff is determined to pursue his claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

171. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

172. Defendants acted on grounds generally applicable to the Reimbursement Class, thereby making relief appropriate with respect to the Reimbursement Class as a whole. Prosecution of separate actions by individual members of the Reimbursement Class would create the risk of varying adjudications with respect to the individual members of the Reimbursement Class that would establish incompatible standards of conduct for Defendants.

173. The identity of the Reimbursement Class is readily identifiable from Defendants' records.

174. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of its violations of the FLSA, FMWA and Florida Constitution.

175. Furthermore, even if every member of the Reimbursement Class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

176. This action is intended to include each and every Server who worked for Defendants at the Mai-Kai restaurant during the five (5) years preceding this lawsuit who did not receive proper reimbursement for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs.

177. During all material times hereto, Plaintiff and all Reimbursement Class members are/were non-exempt employees of Defendants.

178. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand before this claim was filed.

179. More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative Reimbursement Class for the wages owed.

180. The relief Plaintiff seeks is common to the entire class including, inter alia: (a) payment by the Defendants of actual damages caused by its failure to receive proper reimbursement for the costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs; (b) payment by the Defendants of liquidated damages caused by its intentional and/or willful failure to reimburse members of the Class pursuant to the Florida Minimum Wage Act and Florida Constitution; (c) payment by the Defendants of the costs and expenses of this action, including attorney's fees and costs of Plaintiff's counsel.

181. Defendants either willfully chose not to comply with the FLSA and FMWA's laws, and deliberately failed to pay the Reimbursement Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA and FMWA. As a result, Defendants either knew, or showed reckless disregard for the pertinent laws under the FLSA and FMWA.

182. Defendants were aware of the requirements of the FLSA and FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Reimbursement Class members in accordance with the law.

183. Defendants' willful and/or intentional violations of state law entitle Plaintiff and the putative Reimbursement Class members to an additional amount of liquidated, or double, damages.

184. As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the Reimbursement Class members have been damaged.

WHEREFORE, Plaintiff, SEAN CANNET, respectfully requests that this Honorable Court enter judgment in his favor against Defendants, THE MAD ROOM HOSPITALITY, LLC, and THE MAD ROOM, LLC,, and award Plaintiff, and the putative class: (a) reimbursement for the

costs associated with the purchase of their uniforms and other items required by Defendants to perform their jobs; (c) liquidated damages to be paid by Defendants; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendants; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Date: December 1, 2025,** Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-**
**JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Co-Counsel for Plaintiff*

By: */s/ Michael V. Miller*
MICHAEL MILLER, ESQUIRE
Florida Bar No. 64005
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
*Michael@usaemploymentlawyers.com*
*Jordan@jordanrichardspllc.com*

**JONATHAN S. MINICK, P.A.**
169 E. Flagler St. Suite 1600
Miami, Florida 33131
Ph: (786) 441-8909
*Co-Counsel for Plaintiff*

By: */s/ Jonathan S. Minick*
JONATHAN S. MINICK, ESQUIRE
Florida Bar No.: 88743
*jminick@jsmlawpa.com*